## TURK v. MAYBERRY.

No. 1188.    Opinion Filed February 6, 1912.

(121 Pac. 665.)

1.    **COURTS—Inferior Courts—Jurisdiction.** Mayors of cities and towns in Indian Territory, after June 28, 1898, and prior to statehood, ex officio had jurisdiction in civil suits, the same as United States Commissioners in Indian Territory during the same period.

2.    **JUDGMENT—Record—Transcript — Enforcement.** Judgments of United States Commissioners and mayors of cities and towns in Indian Territory, valid and enforceable at the date the state was admitted into the Union, can be transferred to the district court of the proper county, on transcript of the proceedings, and entered on the judgment docket, and enforced by execution out of the district court.

3.    **APPEARANCE — General Appearance — Proceeding for Appeal.** Under the law in force in Indian Territory prior to statehood, the filing of the statutory affidavit and bond for appeal from the judgment of a mayor of a city to the United States Court constituted a general appearance, in an action by the party so taking the appeal, and waived all irregularities regarding the service of summons in the lower court.

4.    **EXECUTION—Sale—What Law Governs.** A sale of real estate, upon execution issued since statehood, to enforce payment of a judgment rendered prior to statehood in Indian Territory, was made subject to the right of the judgment debtor to redeem the property so sold within one year after the sale by paying, as provided by the law in force in Indian Territory at the time the judgment was rendered, the purchase price, together with 15 per cent. per annum thereon, and all lawful charges. **Held,** that a confirmation of such sale, and ordering the sheriff to execute deed to the lands, before the expiration of the statutory time allowed by the laws in force in Indian Territory, prior to statehood, for redemption of the lands by the judgment debtor, was error, and did not

deprive the debtor of his right to redeem; and the order of court, confirming the sale and ordering deed to issue before such period allowed for redemption, is set aside and vacated, with directions.

5. **CONSTITUTIONAL LAW — Vested Rights — Redemption from Foreclosure.** The statutory right of redemption from mortgage foreclosure or execution sale is a rule of property, and cannot be impaired, after the right has accrued, by subsequent legislation.

6. **APPEAL AND ERROR—Harmless Error.** Though the court, before confirming a sale under execution, should have disposed of a pending motion to quash the execution, the failure to do so was not reversible error, where the motion had been pending for nearly a year, and was not called to the attention of the trial court, and did not on its face make a prima facie case for quashing the execution.

7. **EXECUTION—Sale—Credit.** Under Mansf. Dig. Ark., sec. 3056, providing that in all cases where the right to stay the execution exists sales shall be on credit of three months, and section 3026, providing that any execution on a judgment or decree which could be stayed may be stayed, where the right to stay the execution did not exist, it was not necessary that the property be sold on credit, especially where, in the motion to quash the execution, the published notice of sale, showing that the sale was to be for cash, was set up and mentioned, but no complaint was made or objection urged to the terms of the sale.

(Syllabus by Brewer, C.)

*Error from District Court, McClain County;*
*R. McMillan, Judge.*

Action by F. D. Mayberry against Nathan Turk. From an order confirming a sale under execution in favor of the plaintiff, defendant brings error. Reversed and remanded, with directions.

*Glasco & Jacobs,* for plaintiff in error.

*Rennie, Hocker & Moore,* for defendant in error.

Opinion by BREWER, C. This proceeding in error is brought to correct alleged error in the confirmation of a sale of lands under execution. In disposing of the questions presented, it is necessary that a brief history of the litigation be given.

The case was originally brought by F. D. Mayberry against Nathan Turk, in the mayor's court at Purcell, on May 28, 1907,

Turk v. Mayberry.

by filing a complaint, affidavit, and bond for attachment and garnishment. There was service of process on the garnishee, warning order published, attorney for nonresident defendant appointed, who filed report. On July 30, 1907, judgment was given against the defendant, Turk, and the attachment was sustained, and the garnishee ordered to pay a certain amount into court. There was no personal service of summons on the defendant. On August 19, 1907, the defendant, Turk, filed in the case his affidavit and bond for an appeal to the United States Court for the Southern District of Indian Territory, sitting at Purcell. This bond was approved by the mayor's court, and the appeal allowed. The transcript in appeal was filed in the United States Court October 23, 1907. On March 16, 1908, the defendant, Turk, who had taken the appeal, filed a motion to dismiss the case. Thereafter, the order bearing the date, the court heard the motion and dismissed the appeal. Exceptions were taken by both parties; but the order dismissing the appeal was not taken up. On April 18, 1908, the judgment of the mayor's court was ordered placed on the judgment rolls and docket of the district court; the original papers and transcript of the mayor's court proceedings and judgment being filed therein. On April 25, 1908, execution was issued out of the district court, and was levied on lot 3, block 119, in the city of Purcell. The property was advertised for sale, and was appraised, and on June 2, 1908, sold under the execution for $1,000; the same being more than the appraised value. On May 29, 1908, defendant filed motion to quash execution and set aside the judgment. On February 27, 1909, the court entered judgment, confirming the sale and ordering the sheriff to execute deed to the purchaser. The defendant excepted to the making of the order, filed motion for new trial, and, this being overruled, took exceptions and appealed to this court. On the 27th day of June, 1911, the death of the plaintiff in error was suggested to this court, and the cause was revived in the name of Sarah Turk, administratrix, and heirs.

The plaintiff in error urges the following as error: (1) That judgment in the case was void, and could not support the execution. (2) That the court erred in confirming the sale before disposing of a pending motion to quash the execution. (3) That it was error to confirm a sale not on credit. (4) That, on judgment rendered prior to statehood, the judgment debtor had the right to redeem from any sale made under execution; and that this right was not taken from him by the change of laws at the time of statehood.

(1) Was the judgment void? A mayor of a city or town in Indian Territory had, after June 28, 1898, all the jurisdiction to hear and determine cases that United States Commissioners in Indian Territory had, and this jurisdiction was the equivalent of the jurisdiction of a justice of the peace under the laws of the state of Arkansas in force in the Indian Territory. The jurisdiction of mayors was conferred by act of Congress, approved June 28, 1898 (Act June 28, 1898, c. 517, 30 Stat. 495).

The mayor's court, in rendering judgment *in rem,* sustaining the attachment and condemning the money in the hands of the garnishee, was certainly, in this case, within the law. In rendering judgment *in personam,* he exceeded his power, under the law, for want of a personal service of summons. This part of the judgment would unquestionably be void, if the defendant has not appeared in the suit. Did his filing his affidavit and bond for appeal and his appeal of the case constitute a general appearance and a waiver of irregularities in the service, or the want of service, in this case? We think it did. An appeal to the circuit court under the Arkansas law was not taken to review or correct irregularities in the proceedings or judgments of the inferior court, but was for the purpose of trying and determining the case in the circuit court *de novo*—a trial on the merits.

This precise question has been decided by this court in the case of *Farmers' National Bank of Vinita v. First National Bank*

*of Pryor Creek,* 24 Okla. 140, 103 Pac. 685. In that case, Justice Williams, speaking for the court, says:

"It has been repeatedly held by the Supreme Court of Arkansas that a party, by appealing, made himself a party to the proceeding, and could not thereafter object to the jurisdiction of the court over his person"

—citing *McKee v. Murphy,* 1 Ark. 58; *Smith v. Stinnett,* 1 Ark. 497; *Ball v. Kuykendall,* 2 Ark. 195; *Sykes v. Laferry,* 25 Ark. 99; *K. C., S. & M. R. Co. v. Summers,* 45 Ark. 296.

Therefore it follows that, when the plaintiff in error, defendant below, filed his affidavit and bond and took his appeal, superseding the judgment, this was a general appearance and waiver of all the irregularities in the trial court as to jurisdiction of his person, and that, upon the appeal being dismissed on the motion of the appellant, it left the mayor's court judgment a valid one that could be enforced.

(2) The next question—that the court erred in confirming the sale without disposing of the motion to quash the execution —depends largely upon the above conclusions as to the first contention. Ordinarily the court certainly would have disposed of the motion first. Good practice and a desire for orderly procedure certainly would have required the court to do so, if its attention was called to it; but it does not appear that any one called the attention of the court to this motion. It had been filed nearly a year before the order confirming the sale. Still, it being in the case, if it upon its face, and the record supporting it—the motion being based on grounds shown in the record—showed a *prima facie* ground for quashing the execution, under the doctrine of a Kansas case cited by plaintiff in error, the action of the court would have been error justifying a reversal; but, upon examination of the motion and the entire record in the case, and adjudging the point in the light of our holding on the first contention, *supra,* we do not think the motion and record made a *prima facie* case for quashing the execution.

(3) That it was error to confirm a sale not made on credit, as required, in some cases, by the Arkansas law. This is disposed of by saying that, while the Arkansas law provides that,

"in all cases where the right to stay the execution exists sales shall be on credit of three months," etc. (Mansf. Dig. Ark., sec. 3056), it does not appear in the record that this was a case in which the right to stay the execution existed at the time. "Any execution on a judgment or decree which could be stayed may be stayed," etc. (Mansf. Dig. Ark., sec. 3026.) To stay judgment or execution of a justice of the peace, stay must be obtained by filing bond within ten days after date of judgment. Mansf. Dig. Ark., sec. 4090. The right to stay the execution in this case, it appears, did not exist; if not, then there was no requirement that the property be sold on credit. Futhermore, in the motion to quash the execution, the published notice of sale, which shows that the sale was to be for cash, is set up and mentioned, but no complaint is made or objections urged to the terms of the proposed sale; and it reasonably follows that, even if it ought to have been sold on credit, it was waived.

(4) This contention of plaintiff in error raises a very interesting question, and will require consideration of some length. When the contract that furnishes the basis for this suit was made, and at the time when proceedings were brought and judgment rendered upon it, the law in force in the Indian Territory provided that, in the event the debtor either could not or did not pay off and discharge the judgment against him, and the creditor enforced the same by execution upon and sale of his real estate, at any time thereafter within the period of one year from the date of such sale, the debtor could redeem and have restored to him the property by paying the purchase price paid at such sale, together with 15 per cent. per annum thereon. Mansf. Dig. Ark., secs 3067, 3068.

The law in force in Indian Territory further provided that in case of sales of real property under execution:

"The sheriff shall give the purchasers of any real property sold upon execution a certificate of sale, in which the property sold shall be described, and the price for which it is sold stated, and the officer shall return a duplicate thereof with the execution. No conveyance shall be made to the purchaser, nor the possession delivered to him, until the time for redeeming has

expired; and, if said property is redeemed by the defendant as provided in this chapter, the sale and certificate of purchase shall be null and void." (Mansf. Dig. Ark., sec. 3054.)

Therefore it becomes essential to determine whether or not, in execution sales of real estate made on process issuing out of the district court since statehood, upon judgments had prior to statehood, the equity of redemption in favor of the debtor, existing as a matter of law at the time the contract was made, and judgment rendered on it, was such a right as was preserved to the judgment debtor by section 1 of the Schedule to the Constitution, and by section 54 of article 5 of the Constitution. This right was either preserved to the debtor under the said section of the Constitution and the Schedule to the Constitution, or it fell and was lost because of section 2 of the Schedule to the Constitution, which put in force the laws of the territory of Oklahoma on this subject.

In the judgment of the court approving and confirming the sale, the following appears:

"It is ordered and adjudged by the court that said sale and the proceedings be and the same are hereby approved and confirmed; and that it is further ordered that G. H. White, sheriff of said county of McClain, make and execute to the said purchaser at said sale a good and sufficient deed for the premises sold."

While we do not wish to be understood as holding that the rights preserved by the aforesaid section of the Constitution and the Schedule to the Constitution are to be limited by and are no broader than the rights generally termed by law writers "vested rights"—rights that cannot be affected by retroactive legislation—yet, if it appears, from an examination of the authorities, that the right of redemption is such a right that, once existing, it cannot be destroyed by subsequent enactments, then, in this case, it would be unnecessary to discuss how much broader, if any, the scope of the rights actually preserved by the Constitution and Schedule may be.

In the case of *Robards v. Brown et al.*, decided by the Supreme Court of Arkansas, and reported in 40 Ark. 423, the

question at issue is treated of under somewhat similar circumstances.  In that case, in 1880, the trustee in a mortgage executed in 1874 sold certain real estate of the mortgagor.  After the execution of the mortgage, and prior to the sale under it, the Legislature passed an act regulating the sale of property under mortgages, providing, among other things, that mortgagor of real estate may, at any time within twelve months, redeem the property so sold at the mortgage sale.  In that case, within one year after the sale was made, it was sought to redeem the property under the statutes permitting redemption, passed after the execution of the mortgage, and prior to the sale.  The purchaser refused to accept the money in redemption, and brought suit in ejectment to obtain possession of the property.  This suit depended upon the ground that the mortgagor had the right to redeem and had tendered redemption money, and for that reason it was claimed the purchaser at the mortgage sale could not recover.  The court was asked to declare this to be the law, but refused, decided in favor of the plaintiff, and this position was sustained by the affirmation of the cause in the Supreme Court.  In that case, the court says:

"As this raises a federal question, the interpretation which the Supreme Court of the United States has placed upon that clause of the Constitution which prohibits the state from passing laws impairing the obligation of contracts is of controlling influence with us.  And we find that, in *Bronson v. Kinzie,* 1 How. 311 [11 L. Ed. 143], this precise question was presented.  It was there decided, after the most mature deliberation, Chief Justice Taney delivering the opinion of the court, that both the appraisement and redemption clause of a similar act, passed by the Legislature of Illinois, were unconstitutional, as applied to mortgages previously executed.  This decision has been followed in *McCracken v. Hayward,* 2 How. 608 [11 L. Ed. 397], *Grantly's Lessees v. Ewing,* 3 How. 707 [11 L. Ed. 794], *Howard v. Bugbee,* 24 How. 461 [16 L. Ed. 753], *Barnitz v. Beverly,* 163 U. S. 118 [16 Sup. Ct. 1042, 41 L. Ed. 93], and in numerous other cases."

The court further says in that case:

"And this construction rests upon a very solid foundation of reason, as well as authority.  The laws which are in force

at the time when and the place where a contract is made and to be performed enter into and form a part of it. This is only another mode of saying that parties are conclusively presumed to contract with reference to the existing law. The Constitution forbids all laws alike which affect the validity, construction, discharge, and enforcement of contracts. The state may change legal remedies, forms of action, of pleading, and of process, the times of holding courts, etc., and may shift jurisdiction from one court to another, and such changes may have the incidental effect of delaying the collection of debts; but the Legislature cannot, under the guise of legislating upon the remedy, in effect, impair the obligation of contracts. The idea of right and remedy are so intimately associated as often to be inseparable."

Now, any legislation which deprives a party of a remedy substantially as efficient as that which existed at the making of the contract does impair its obligatory force. *Von Hoffman v. Quincy,* 4 Wall. 535, 18 L. Ed. 403; *White v. Hart,* 13 Wall. 646, 20 L. Ed. 685; *Walker v. Whitehead,* 16 Wall. 314, 21 L. Ed. 357; *Gunn v. Barry,* 15 Wall. 610, 21 L. Ed. 212; *Edwards v. Kearzey,* 96 U. S. 595, 24 L. Ed. 793.

In the Arkansas case referred to, the court refused to uphold the legislation providing for an equity of redemption, passed after the mortgage was executed, and held that it had no retroactive force upon a contract executed before its passage, and that therefore the creditor holding the mortgage could sell the lands after the act had been passed, giving the equity of redemption, and yet, because the act had the effect of impairing the obligation of the original contract, the mortgagor could not redeem.

Under the same reasoning, it certainly must be true that the court would have reached the conclusion that an enactment denying the right of redemption, passed after such right had accrued, would be equally invalid as against the judgment debtor, and for the same reason. In other words, a debtor's right to redeem his lands from a mortgage sale, or from an execution sale, where the statute gives that right, ought to be as sacred as is the right of the creditor to have his mortgage foreclosed under the laws existing at the time it was made, and freed from the right of

redemption granted to the debtor subsequent to the making of the contract.

In *Hudgins v. Morrow et al.,* decided by the Supreme Court of Arkansas, and reported in 47 Ark. at page 515, 2 S. W. 104, it is said:

"The act of March 17, 1879, for the redemption of property from mortgage sales, has no application to mortgages executed before the passage of the act."

The A. & E. Ency. Law (2d Ed.) vol. 11, 213, states the proposition thus:

"The question has been raised in many cases whether a statute giving the right to redeem after foreclosure, or altering a right previously given, can be applied to mortgages existing at the time when the statute took effect. At first it was held that such statutes merely affected the remedy of the parties to a mortgage, and were valid in respect to existing mortgages; but it was afterwards held by the Supreme Court of the United States that a statute giving the right to redeem from a foreclosure sale was unconstitutional as to mortgages existing before the statute took effect, and the doctrine is now well settled in accordance with this decision. The same rule applies to amendatory statutes changing the time for redemption."

If the rule applies to amendatory statutes changing the time of redemption, it would surely apply when the new law goes further than merely changing the time, and actually takes the right away.

A right of redemption, given by a statute in force at the time the mortgage was made, is a rule of property, and is as obligatory on the federal courts as on those of the state. *Brine v. Hartford F. Ins. Co.,* 96 U. S. 627, 24 L. Ed. 858; *Orvis v. Powell,* 98 U. S. 176, 25 L. Ed. 238; *Swift v. Smith,* 102 U. S. 442, 26 L. Ed. 193; *Mason v. Life Ins. Co.,* 106 U. S. 163, 1 Sup. Ct. 165, 27 L. Ed. 129; *Parker v. Dacres,* 130 U. S. 43, 9 Sup. Ct. 433, 32 L. Ed. 848. That the same reasoning and the rule announced in reference to the redemption under statutes in foreclosure sales apply to the redemption under statutes in execution sales appears manifest, and it has been so held, if, indeed, authority on the proposition is necessary. *Kent v. Laffan,*

2 Cal. 595; *McMillan v. Richards*, 9 Cal. 365, 70 Am. Dec. 655; *Besser v. Hawthorn*, 3 Ore. 130.

We therefore conclude that the right of redemption, under execution sales of land, upon process issued since statehood, on judgment rendered prior to statehood, remains in the judgment debtor, and that the change of laws at the time of the adoption of the Constitution did not affect this right, and that the confirmation of the sale in this case, prior to the expiration of the time allowed by the law, in force at the time of judgment, for the exercise of the right of redemption, was prejudicial to that right, and that therefore the order of confirmation should not have been made at the time it was made, and must be set aside; but having held, as we do hold, that in this case the judgment is valid, and the execution, levy, and sale are in substantial conformity to law, and ought not to be disturbed, and it appearing that after the sale in this case eight months and 25 days of the statutory time for redemption had expired before the confirmation, with no effort on the part of debtor to redeem, thus really depriving him of only 95 days of the time allowed him, the cause is reversed and remanded, with directions to the district court of McClain county to set aside the order confirming the sale and ordering deed to issue, and hold the motion for confirmation in abeyance for 95 days from the date of the filing of this opinion, to the end that the plaintiff in error, or his personal representatives and heirs in his right, may redeem the lot from the execution sale if they so choose, under and in compliance with sections 3067, 3068, of Mansfield's Digest of the Laws of Arkansas, in which event the motion for confirmation will be denied. If they do not so redeem, it will be sustained by the court, and deed ordered to issue.

The cause should, therefore, be reversed and remanded, with directions given in the opinion.

By the Court: It is so ordered.